USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/30/24

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,

-against-                                                23-cr-0591 (LAK)

CYRON LEE,

                       Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM AND ORDER ON *IN LIMINE* MOTIONS

LEWIS A. KAPLAN, *District Judge.*

        Defendant awaits trial on two substantive counts of distribution of controlled substances and one count of conspiracy to distribute and possess with intent to distribute controlled substances.[1] The matter is before the Court on motions *in limine* by the government.[2]

        The government moves *in limine* to (i) admit certain evidence as direct evidence of the charged conduct or, alternatively, pursuant to Fed. R. Evid. 404(b), (ii) preclude defendant from introducing certain evidence and arguments as irrelevant or unfairly prejudicial, (iii) partially close the courtroom during the testimony of an undercover law enforcement officer, and (iv) permit the undercover officer to testify pseudonymously. Defendant opposes all but the last of the government's motions.[3]

---

[1] Dkt 49.

[2] Dkt 46.

[3] Dkt 53.

2

I.     *Motion to Admit Evidence of Prior Bad Acts*

The government moves to admit as direct evidence of the charged conduct or, alternatively, under Fed. R. Evid. 404(b), evidence that defendant (1) engaged in uncharged drug trafficking with a cooperating witness ("CW") and several co-conspirators ("CC"), and (2) operated a social media account that exposed individuals defendant suspected of cooperating with law enforcement.

Evidence that defendant engaged previously in drug trafficking, including with many of the same individuals with whom he now is charged with conspiring, is direct evidence of the charged conspiracy. Evidence of a defendant's "prior criminal conduct with his co-conspirators" is "relevant to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between the participants in the crime developed."[4] The evidence proffered by the government does precisely this. Evidence of the circumstances in which CW-1 and defendant met and of the nature of their relationship is direct evidence of the conspiracy charged in Count One.[5] So too is evidence that defendant told CW-1 that he previously had done business with other alleged co-conspirators. Similarly, evidence obtained from defendant's cell phone pertaining to uncharged drug trafficking with co-conspirators is admissible as direct evidence of the charged conspiracy. In the alternative,

---

[4] *See United States v. Williams*, 205 F.3d 23, 33–34 (2d Cir. 2000) (internal quotation marks omitted).

[5] *See United States v. Pitre*, 960 F.2d 1112, 1119 (2d Cir. 1992) ("[E]vidence of a pre-existing drug-trafficking relationship between the defendant and a co-conspirator" is relevant because it may "aid the jury's understanding of how the transaction for which the defendant was charged came about and his role in it.").

the evidence proffered by the government would be admissible under Rule 404(b) substantially for the reasons stated by the government.[6] Any risk that the jury might convict defendant on the basis of conduct for which he is not charged may be foreclosed by an appropriate instruction, which the parties have requested.[7] Moreover, and contrary to defendant's contention, the evidence proffered by the government would not involve conduct "more sensational" or "inflammatory than the charged crime."[8] The probative value of the evidence the defendant would have excluded would not be outweighed substantially by the risk of unfair prejudice.

Evidence that defendant collaborated with CW-1 to operate an Instagram account to expose those whom he suspected of cooperating with law enforcement is admissible as direct evidence of defendant's involvement in the charged conspiracy. Among other things, defendant allegedly operated the Instagram account during the time period of the charged conspiracy, in collaboration with an alleged co-conspirator, and for the purpose of furthering the charged conspiracy. This evidence is relevant to the jury's consideration of the conspiracy alleged in Count One. It in any case would be admissable under Rule 404(b) at least for the purpose of showing consciousness of guilt. The probative value of this evidence would not be outweighed substantially by the risk that it would have an unfairly prejudicial effect.

---

[6] Dkt 46 at 11.

[7] Dkt 51 at 33.

[8] Dkt 53 at 6 (internal quotation marks omitted).

II.  *Motion to Preclude Evidence, Cross-Examination, and Argument Concerning Disciplinary Action Taken Against Detective-1*

The government moves to preclude defendant from introducing evidence and argument concerning, and from pursuing cross-examination related to, disciplinary action taken against Detective-1. Specifically, the government moves to preclude evidence, argument, and cross-examination concerning the fact that (1) Detective-1 prepared an inaccurate invoice for a controlled substance in 2021 during an investigation *unrelated* to this case (the "Invoicing Incident"), and (2) Detective-1 was the subject of a substantiated Civilian Complaint Review Board ("CCRB") allegation for which he was subsequently adjudicated "not guilty." Defendant opposes the government's motion in part, arguing that he should be permitted to cross-examine Detective-1 regarding the Invoicing Incident.

Federal Rule of Evidence 608(b) prohibits a party from presenting "extrinsic evidence . . . to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." During cross-examination, however, a court may permit inquiry into such instances "if they are probative of the character for truthfulness or untruthfulness of" the witness.[9] The Court of Appeals has "repeatedly emphasized [that] . . . [t]rial judges retain wide latitude . . . to . . . limit[] . . . . such cross-examination based on concerns about . . . confusion of the issues . . . or interrogation that is repetitive or only marginally relevant."[10]

The proposed cross-examination regarding the Invoicing Incident would have little,

---

[9] Fed. R. Evid. 608(b).

[10] *United States v. Crowley*, 318 F.3d 401, 417 (2d Cir. 2003).

5

if any, relevance to Detective-1's character for truthfulness. The incident involved a minor error — Detective-1 miscounted by one the number of prescription drugs in a prescription pill blister-pack. Nothing before the Court suggests that this error was intentional or malicious. In other words, nothing suggests that the Invoicing Incident was anything other than an innocent mistake — and an aberrant one at that. Accordingly, the Court holds that cross-examination regarding the Invoicing Incident would be improper under Rule 608(b).[11] In the alternative, such cross-examination properly would be precluded under Rule 403 because its minimal probative value would be substantially outweighed by the risk of confusing the jury.

### III.   Motion to Close Courtroom

The government moves to close partially the courtroom during the testimony of an undercover law enforcement officer ("UC"). Specifically, it requests that the public — but not the defendant's immediate family — be excluded from the courtroom during the UC's testimony.

The public trial guarantee of the Sixth Amendment "is not absolute" and "may give way in certain cases to other rights or interests, such as . . . the government's interest in inhibiting

---

[11]   *Compare United States v. Teron*, 478 F. App'x 683, 685 (2d Cir. 2012) (summary order) (trial court did not err by precluding cross-examination regarding substantiated CCRB complaint because CCRB did not make "an adverse credibility determination about" the officer and thus its finding was not "probative of [his] truthfulness"), *with Crowley*, 318 F.3d at 417 ("[A]lleged instances of false accusation, were certainly relevant to the witness's credibility.").

disclosure of sensitive information."[12]  "[C]ourts may constitutionally close a courtroom if: (1) closing the proceeding would advance an overriding interest; (2) the closure is no broader than necessary to protect that interest; (3) the trial court considers reasonable alternatives; and (4) the trial court makes findings adequate to support the closure."[13]  These requirements are satisfied here.

First, partially closing the courtroom would advance an extraordinarily compelling interest — shielding the identity of the UC.  As the government explained, closing the courtroom is necessary to protect both the safety of the UC and ongoing and future criminal investigations in which the UC is involved.  Requiring the UC to testify in an open courtroom and thereby risk identification by someone targeted by or associated with those investigations would jeopardize the UC's safety and work.  The Court of Appeals has "repeatedly held that, under appropriate circumstances, courts may properly order courtrooms closed during the testimony of undercover police officers, in order to protect both the officers' safety and their future effectiveness."[14]  Defendant does not dispute the magnitude of the public interest at stake here.

Second, the partial closure proposed by the government is no broader than is necessary to protect the UC's identity. Under the government's proposal, the defendant's immediate

---

[12] *United States v. Gupta*, 699 F.3d 682, 687 (2d Cir. 2012) (quoting *Waller v. Georgia*, 467 U.S. 39, 45 (1984)).

[13] *United States v. Hunt*, 82 F.4th 129, 140 (2d Cir. 2023), *cert. denied*, No. 23-6305 (U.S. Apr. 22, 2024) (internal quotation and alteration marks omitted); *see Waller*, 467 U.S. at 48. Where, as here, a closure is "partial," "a substantial reason rather than an overriding interest will justify the closure." *Hunt*, 82 F.4th at 140 n.4.

[14] *Gonzalez v. Quinones*, 211 F.3d 735, 738 (2d Cir. 2000) (collecting cases).

family would be permitted in the courtroom during the UC's testimony;[15] a live audio-only feed of the UC's testimony would be available to the public in another courtroom; and the government would make the daily transcript of the UC's testimony available to the public.[16] These measures strike an appropriate balance between the government's compelling interest in protecting the UC's identity and the defendant's and public's interest in a public trial. The Court, therefore, disagrees with defendant's assertion that "the government's proposed closure . . . is overbroad."[17] The government's motion is granted. Should members of the press seek admission to the trial courtroom during the UC's testimony, the Court would entertain such a request.

Third, no alternatives means would be preferable to those set out above. Defendant's proposal to station an officer at the "courtroom door to screen individuals wishing to enter"[18] does not appear to be an efficacious alternative. It is unclear for what purpose the officer would be screening spectators or on what basis the officer might exclude those seeking to enter. Defendant's other proposal — "allowing the UC to testify in disguise in a manner in which his facial expressions

---

[15] "[T]he Supreme Court has specifically noted a special concern for assuring the attendance of family members of the accused." *Vidal v. Williams*, 31 F.3d 67, 69 (2d Cir. 1994) (citing *In re Oliver*, 333 U.S. 257, 271–72 & n.29 (1948)).

[16] *See Hunt*, 82 F.4th at 141 ("In evaluating the breadth of a closure, we consider several factors, including the closure's duration, whether all or just some spectators were excluded, and whether the public can learn what transpired while the trial was closed." (internal quotation marks omitted)).

[17] Dkt 53 at 14.

[18] Dkt 53 at 14 (internal quotation marks omitted).

8

and body language would still be visible"[19] — is similarly wanting. It is unlikely that a disguise could protect the UC's identity without interfering with the jury's ability to observe and assess the UC's demeanor. The Court has not identified any less restrictive but nonetheless effective alternatives to those set out above.

Last, the Court notes but does not share defendant's concern that jurors conceivably could draw an inference adverse to the defendant "if [they] realize[d] that the court has closed the courtroom for the UC's testimony."[20] Because the closure will be only partial, defendant's immediate family will be permitted in the courtroom during the UC's testimony and, in consequence, the gallery will not necessarily be empty. Moreover, any risk that the jury might draw an improper inference may be foreclosed by other means.

## IV. Motion to Permit Undercover Officer to Testify Pseudonymously

The government moves to permit the UC to testify at trial using a pseudonym. The motion, to which defendant consents, is granted. The government shall provide materials to the defendant regarding the witness consistent with its obligations under *Giglio* and its progeny. The government shall disclose to defense counsel the true name of the UC on an "attorney's eyes only" basis. Defense counsel shall not refer to the UC by his true name in court nor shall they disclose the

---

[19] Dkt 53 at 14.

[20] Dkt 53 at 15.

9

true name of the UC to anyone else, including the defendant.[21]

## CONCLUSION

The government's *in limine* motion (Dkt 46) is granted in all respects.

SO ORDERED.

Dated:   May 30, 2024

_____
Lewis A. Kaplan
United States District Judge

---

[21] *See United States v. Marti*, 421 F.2d 1263, 1266 (2d Cir. 1970); *United States v. Raniere*, No. 20-3520-CR, 2022 WL 17544087, at *6-7 (2d Cir. Dec. 9, 2022) (summary order), *cert. denied*, 143 S. Ct. 1756 (2023).